**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **ROBERT M. ANDERSON,** )<br>)<br>    **Plaintiff,** )<br>)<br>        v. )<br>)<br>**AON CORPORATION,** )<br>)<br>    **Defendant.** ) | <br><br><br><br>No. 06 C 06241<br><br>Judge Rebecca Pallmeyer |

## MEMORANDUM OPINION AND ORDER

This action has been pending since 2003, when Plaintiff Robert Anderson, a California resident, filed suit against Defendant Aon Corporation ("Aon"), alleging that Aon made a series of misleading statements in its public filings between 2000 and 2002 that induced him to hold rather than sell his Aon stock. Plaintiff contends, further, that had he known the truth about Aon's financial problems, he would not have sold a put option that he purchased from Merrill Lynch protecting him from a drop in the value of Aon's stock. In the current complaint, Plaintiff asserts a holder action under California law based on allegations of fraud (Count I) and negligent misrepresentation (Count II). "Holder actions" are suits by investors who claim that they were wrongfully induced to hold stock when they would otherwise have sold their shares. The federal securities laws do not recognize such claims, but California law does.

Plaintiff originally filed this lawsuit in California state court. Defendant removed the suit to federal court and it was transferred to the United States District Court for the Northern District of Illinois, where it was assigned to Judge Manning. Judge Manning, concluding that Illinois law supplied the rule of decision, dismissed the suit on the grounds that Illinois law does not recognize a holder action.[1] The Court of Appeals reversed, holding that California law applied, and remanded

---

[1] Judge Manning found it undisputed that Illinois does not allow holder actions, but the Court of Appeals was less certain. In its opinion reversing Judge Manning's order dismissing the suit, the Seventh Circuit observed that the Illinois state judiciary "has yet to make up its mind"
(continued...)

the case to this court. In its opinion remanding this case, the Court of Appeals identified a number of difficulties Plaintiff would face in attempting to pursue this case. Citing a number of those concerns, Defendant now moves to dismiss, and for the reasons explained below, the motion is granted.

## FACTUAL AND PROCEDURAL BACKGROUND

In October 1997, Robert Anderson sold his insurance brokerage firm to Aon Corporation and received 94,764 shares of Aon stock as part of the consideration Aon paid for the sale. (Am. Compl. [143], Oct. 27. 2010 (hereinafter, "Am. Compl."), ¶ 13.) As of October 30, 1997, Aon stock was selling at $53.94 per share, and Plaintiff estimates that his shares were worth over $5 million. (*Id.* ¶ 2.) On October 16, 2000, Plaintiff purchased a two-year "collar" from Merrill Lynch on 83,334 of his Aon shares with a put value of $33.19 per share.[2] (*Id.* ¶ 14.) As Plaintiff describes it, a collar is an options strategy in which "an investor holds the shares of the underlying stock and writes a call contract above the current market price to have some limited profit potential if the stock price goes up, but the investor also buys a put contract below the current market price for protection if the stock price goes down." (*Id.* ¶ 14.) The put option hedges against the risk that the value of a stock will decrease in the short term by giving its holder the right to sell underlying shares of stock at a fixed "strike price" if the stock price goes down on or before a fixed date. Under Plaintiff's "collar" deal with Merrill Lynch, if the market value of Aon stock dropped below the $33.19 strike price before the expiration of the contract on October 17, 2002, Plaintiff had the option to require Merrill Lynch to purchase the 83,334 shares at that $33.19 price, thus protecting Plaintiff from any further loss. Plaintiff's remaining 11,430 Aon shares were not protected by the collar with Merrill

---

[1](...continued)
on the subject of holder actions. *See Anderson v. Aon Corp.*, No. 06 C 6241, 2008 WL 4865574, at *4 (N.D. Ill. June 16, 2008), *rev'd*, 614 F.3d 361 (7th Cir. 2010).

[2]   Plaintiff does not disclose the amount he paid Merrill Lynch at the outset for his put option. As of October 31, 2000, Aon was trading at $41.43 per share. (Am. Compl. ¶ 15.)

Lynch.  (*Id.* ¶ 14.)

Plaintiff alleges that between September 2000 and March 2002, Aon made a series of false statements in annual reports and press releases in which it substantially overstated its income—leading Plaintiff to believe the company was "doing well" financially.  (*Id.* ¶¶ 15-33, 37.)  In each of the press releases cited by Plaintiff, Aon reported its net income for the quarter (or year) and Aon's CEO Patrick Ryan commented on Aon's performance, often praising the company's growth in revenue and noting its "solid" quarterly results.  (*Id.* ¶¶ 17, 20.)  Plaintiff claims that he "carefully followed" each of Aon's public filings regarding its financial results, and decided on June 19, 2002, to "unwind his collar" and sell the put option on his 83,334 Aon shares in response to Aon's "glowing 2002 first quarter report."  (*Id.* ¶¶ 4, 37.)  Because there were four months remaining before the expiration of his option and because Aon stock was trading at $29.49 per share in June 2002—well below the established $33.19 strike price— Plaintiff received $196,668.24 in the sale of his put.[3]  (*Id.* ¶¶ 37, 38.)  The sale of the put option did not affect his remaining 11,430 shares that were not part of the collar agreement, however.

On August 7, 2002, the price of Aon stock dropped to $14.34 after Aon disclosed that the SEC was investigating the company's accounting practices.  (*Id.* ¶¶ 5, 40.)  On September 27, 2002, Aon restated its earnings for 2001 and the first quarter of 2002; the restatement revealed that the company had overstated its income for 2001 by $56 million and had overstated its income for the first quarter of 2002 by $5 million.  (*Id.* ¶¶ 7, 44.)  Plaintiff claims that he also learned from Aon's September filing that the company had made false representations regarding its income in its 10-K filings with the SEC in 1999, 2000, 2001 and in its 10-Q quarterly report for the period ending in March 2002.  (*Id.* ¶ 46.)

---

[3] Plaintiff has not offered any explanation as to why he viewed a $29.49 stock price—$3.70 lower than the $33.19 strike price and $11.94 below the $41.43 at which Aon traded in October 2000—as an indication of Aon's financial health.

In addition to overstating its income in public filings, Plaintiff alleges, Aon fraudulently concealed its use of improper accounting practices. Specifically, Plaintiff claims that Aon engaged in the following deceptive practices: (1) Aon failed to follow the revenue recognition policy it described in its fourth quarter 2001 SEC filing; (2) Aon improperly received advance payments on commissions before the fees were actually earned; (3) Aon concealed facts relating to a disputed $90 million reinsurance receivable for employees killed at Aon's headquarters at the World Trade Center on September 11, 2001; (4) Aon concealed its receipt of contingency commissions from certain unnamed insurance carriers; (5) Aon concealed its purchase of insurance commission revenues through its investment in certain unidentified private equity partnerships; (6) Aon concealed improper advance revenue recognition relating to insurance on certain unidentified construction projects.[4]  (*Id.* ¶¶ 6, 36.)  Plaintiff does not fully explain how each of these practices affected Aon's share price, but he contends that these instances of concealment demonstrate that "it is simply impossible that Aon could have been truly ignorant of the fraud that it was committing." (Pl.'s Resp. at 12.)

In Plaintiff's view, Aon acted with intent to defraud the investing public because it attempted to assure its investors of its value even though it knew that its press releases were materially false and misleading.  Plaintiff claims that had he read a "truthful account" of Aon's financial health, he would have sold his stock for cash, exercised his put option in August 2002 when the stock price dropped to $14.34 per share, and recovered $1,570,845.90.[5]  (*Id.* ¶¶ 5, 62.)  Instead, Plaintiff asserts, he was forced to liquidate his Aon shares when the stock price dropped in August 2002 and he suffered a loss in excess of $1.5 million.  (*Id.* ¶ 43.)

---

[4]  Plaintiff claims that he learned of Aon's failure to disclose each of these irregularities sometime after Aon announced that the SEC was investigating the company in August or September 2002.  (Am. Compl. ¶ 6.)

[5]  Plaintiff does not explain precisely how he calculated this figure.

In September 2003, Plaintiff filed his first complaint against Aon and two of its Illinois executives in California state court, asserting that he was wrongfully induced to hold rather than sell his Aon stock. Aon removed the case to federal district court on the basis of diversity and federal question jurisdiction, and Plaintiff filed an amended complaint, dismissing the Illinois defendants to avoid the transfer. Later, Plaintiff voluntarily dismissed the entire complaint after the California district court expressed its tentative intention to transfer the case to Illinois pursuant to 28 U.S.C. § 1404(a). On June 15, 2005, Plaintiff filed a third complaint in state court, again asserting his holder claim, but adding claims of common law fraud, unfair competition, breach of fiduciary duty, RICO, and civil conspiracy, as well. Aon removed the action to district court based on federal question jurisdiction, and in response, Plaintiff voluntarily dismissed his RICO claim and moved for remand, insisting that his RICO claim had been added to the complaint "inadvertently." Noting that jurisdiction is determined as of the time of removal, the California district court denied the motion to remand, and instead transferred the case to this court on November 15, 2006.

The case was initially assigned to Judge Manning, who concluded that Illinois law applied and dismissed Plaintiff's third amended complaint on the ground that Illinois does not recognize "holder" actions. *See Anderson v. Aon Corp.*, No. 06 C 6241, 2008 WL 4865574 (N.D. Ill. June 16, 2008). On July 14, 2008, Plaintiff filed a fourth amended complaint, for the first time alleging federal and state securities violations, in addition to the common law fraud claims and other state law claims he had alleged earlier. Judge Manning concluded that his claims were time-barred and dismissed the complaint with prejudice. *See Anderson v. Aon Corp.*, No. 06 C 6241, 2008 WL 5388321 (N.D. Ill. Dec. 22, 2008).

Plaintiff appealed that order and argued that after the case was transferred to Illinois, the district court should have applied California's substantive law to his holder claims.[6] The Seventh

---

[6] Plaintiff argued, further, that once he withdrew the RICO claim in his third complaint,
(continued...)

Circuit agreed with that assertion. *Anderson v. Aon Corp.*, 614 F.3d 361 (7th Cir. 2010). In remanding the case, the Court of Appeals observed that even though the district court determined that Illinois law does not permit holder actions, "the state judiciary has yet to make up its mind." *Id.* at 366 (citing *Dloogatch v. Brincat*, 396 Ill. App. 3d 842, 920 N.E.2d 1161 (1st Dist. 2009)). As a result, the Seventh Circuit concluded that California law must apply to Plaintiff's holder action because while "California has decided that holder actions are in the public interest, Illinois has *not* decided that they disserve the public interest," and thus, California "would find its interests more impaired by a decision to use the other state's law." *Id.* at 366 (emphasis in original).

Though the court did not reach the merits of Plaintiff's complaint, the court expressed skepticism about the viability of Plaintiff's claims. The court observed that any of Plaintiff's claims about Aon's "mismanagement" were misplaced in an action based on fraud: the alleged fraud merely "deferred the time when the stock's price accurately reflected the value of Aon's business." *Id.* at 367. The court also predicted that Plaintiff would likely face an additional hurdle in demonstrating sufficient causation. In his opinion for the court, Judge Easterbook proposed the following scenario: "Suppose Aon had revealed the truth as soon as its managers knew about business problems. Then the stock's price would have fallen to reflect the bad news, because Aon is a substantial firm trading in an efficient stock market." *Id.* Plaintiff nevertheless claims that he would not have held his Aon shares had he known the truth about Aon's financial problems. Yet as the Seventh Circuit pointed out, Plaintiff "can show injury only if he would have sold his shares ahead of the decline," and any "public announcement of the truth would have made it impossible for Anderson to avoid the loss." *Id.*

---

[6](...continued)
the district courts in California and Illinois no longer had federal jurisdiction and should have remanded the case to state court. The Seventh Circuit disagreed on this score, however, concluding that the district courts properly exercised their supplemental jurisdiction because Plaintiff's holder claims under California law and his RICO claim arose from the same set of transactions. *Anderson*, 614 F.3d at 364.

On remand, the case was reassigned to this court on August 18, 2010, pursuant to 28 U.S.C. § 294(b). Plaintiff filed another amended complaint on October 7, 2010, largely repeating the allegations of his previous complaints, but now exclusively characterizing his fraud and negligent misrepresentation claims as a "holder action" under California law.

## **ANALYSIS**

Defendant argues Plaintiff's complaint should be dismissed for failure to state a claim on a number of grounds. In order to survive a 12(b)(6) motion, a plaintiff's complaint must contain a "short and plain statement of the claim" and must contain sufficient factual matter that when accepted as true, states a claim that is "plausible on its face." FED. R. CIV. P. 8(a)(2); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While "detailed factual allegations" are not required, the complaint must present more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555.) When a plaintiff alleges fraud, "a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b).

Plaintiff's current complaint asserts a holder action based on fraud (Count I) and negligent misrepresentation (Count II). In California, the elements of fraud are: (1) misrepresentation; (2) knowledge of falsity (or "scienter"); (3) intent to defraud; (4) justifiable reliance; and (5) resulting damage. *Small v. Fritz Companies, Inc.*, 30 Cal. 4th 167, 173, 65 P.3d 1255, 1258 (2003) (citing *Lazar v. Superior Court*, 12 Cal. 4th 631, 638, 909 P.2d 981, 984 (1996)). Unlike common law fraud, a claim of negligent misrepresentation does not require a showing that the defendant knew of the falsity, but does require the plaintiff to show that the defendant made a misrepresentation without a reasonable basis to conclude it was true. Thus, to state a claim for negligent misrepresentation, the plaintiff must establish: "(1) the misrepresentation of a past or existing

7

material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage." *Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*, 158 Cal. App. 4th 226, 243, 70 Cal. Rptr. 3d 199, 213 (Ct. App. 2007) (citing *Shamsian v. Atlantic Richfield Co.*, 107 Cal. App. 4th 967, 983, 132 Cal. Rptr. 2d 635, 647 (Ct. App. 2003)). A complaint alleging fraud and negligent misrepresentation in a "holder action" must also be pleaded with sufficient particularity, meaning that the plaintiff must plead "facts which show how, when, where, to whom, and by what means the representations were tendered." *Lazar*, 12 Cal. 4th at 645 (quotation omitted); *see also Small*, 30 Cal. 4th at 184, 65 P.3d at 1265 (holding that complaint for negligent misrepresentation in a holder action must be "pled with the same specificity required in a holder's action for fraud."); FED. R. CIV P. 9(b) ("[I]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").

Defendant contends that Plaintiff's latest complaint should be dismissed because (1) Plaintiff has failed to sufficiently allege reliance and causation for both of his claims; (2) he has failed to plead scienter with the required specificity under FED. R. CIV. P. 9(b) for his fraud claim; and (3) his negligent misrepresentation claim is time-barred. The court examines each of these arguments in turn.

**A.     Count I:  Fraud**

Plaintiff's primary allegations of fraud concern Aon's misleading statements regarding its revenue. Plaintiff claims that Aon substantially overstated its earnings in multiple press releases from 2000 to 2002,[7] and has charged Aon with knowledge that its financial statements were

---

[7]     As the court reads his allegations, Plaintiff's complaint focuses on allegedly misleading statements issued by Aon between September 2000 and March 2002. (Am. Compl. ¶¶ 15-33.) In Plaintiff's response brief, the time frame is a bit broader; Plaintiff there states that he relied on the financial reports issued by Aon from 1999 through 2002. (Pl.'s Mem. in Opp. to Def.'s Mot. to Dismiss at 7.) Plaintiff has not explained the discrepancy in these dates and the court will
(continued...)

materially false. A company's overstatement of its revenues may support a claim of fraud, if the plaintiff can "show with particularity how the [false] adjustments affected the company's financial statements and [that] they were material in light of the company's overall financial position." *In re Daou Systems, Inc.*, 411 F.3d 1006, 1018 (9th Cir. 2005). *But see Higginbotham v. Baxter Intern., Inc.*, Nos. 04 C 4909, 04 C 7096, 2005 WL 1272271, at *7 (N.D. Ill. May 25, 2005) (citations omitted) ("Overstatements of income or revenues are not by themselves sufficient to draw an inference of scienter.").

Here, apart from his assertion that Aon overstated its income in its press releases and 10-K's for 2000 and 2001, Plaintiff identifies no other circumstances which support an inference of scienter relevant to Plaintiff's holder claim. Plaintiff notes several other instances of Aon's allegedly improper accounting practices that were revealed sometime in August or September 2002, including: (1) Aon's alleged failure to follow generally accepted accounting principles; (2) Aon's practice of having customers pay it "consulting fees" based on anticipated commissions; (3) Aon's wrongful attempt to obtain a $90 million dollar travel reimbursement for its employees killed at Aon's office in New York City; (4) Aon's concealment of its practice of placing clients with certain unidentified insurance carriers who are willing to pay the highest contingency commissions; (5) Aon's concealment of purchasing its insurance commissions by entering into agreements with unidentified private equity partnerships; and (6) Aon's concealment of improper advance revenues relating to unidentified construction projects.[7] According to Plaintiff, these practices "concern the core business of Aon," (Pl.'s Mem. at 11-12), but Plaintiff has not stated how any of them

---

[7](...continued)
confine its discussion to Aon's public announcements between September 2000 and March 2002.

[7] Plaintiff claims that Aon recorded this $90 million receivable for the fourth quarter of 2001, thereby deceiving the market about its income in 2001. Plaintiff claims, further, that Aon concealed the fact that Lloyds of London was in fact disputing the receivable, though he does not state when exactly this dispute occurred. (Am. Compl. ¶ 36.)

demonstrates Aon's knowledge of its misrepresentations in its financial statements as a whole. Even more significantly, Plaintiff fails to explain with specificity how each of these alleged improper accounting practices contributed to Aon's overstatement of its income; each appears to relate more to Aon's purported mismanagement than fraud. Yet as the Seventh Circuit previously cautioned, Aon's mismanagement (as opposed to its fraud) is insufficient to support allegations in a holder action. *See Anderson*, 614 F.3d at 367 (explaining that any alleged fraud merely "deferred the time when the stock's price accurately reflected the value of Aon's business.").

Defendant urges that Plaintiff has also failed to sufficiently allege that he relied on any false representations regarding Aon's revenue. The court agrees. In order to successfully plead "a bona fide claim of actual reliance," a plaintiff in a holder action "must allege specific reliance on the defendant's representations: for example, that if the plaintiff had read a truthful account of the corporation's financial status the plaintiff would have sold the stock, how many shares the plaintiff would have sold, and when the sale would have taken place." *Small*, 30 Cal. 4th at 184, 65 P.3d at 1265. Plaintiff insists that he "carefully followed the public announcements and filings by Aon concerning its financial results" (Am. Compl. ¶ 37), and provides statements from Aon's CEO reporting the company's increased revenues, but Plaintiff does not sufficiently explain when exactly he relied on those representations; how many Aon shares he would have sold, had he known of the company's financial troubles; or when he would have executed that sale. Plaintiff does assert that he relied on Aon's financial reports from 2000 through 2002 in choosing to unwind his collar and sell his put in June 2002, and that absent Aon's representations, he would have exercised his put on his 83,334 Aon shares in August 2002. Yet Plaintiff does not address his remaining 11,430 shares that were not subject to his collar with Merrill Lynch. As explained in greater detail below, the fact that Plaintiff sold the 2000 put option he purchased from Merrill Lynch (a third party) is not sufficient, by itself, to show that he retained his Aon stock in reliance on any alleged misrepresentation by Aon.

In its decision remanding the case, the Seventh Circuit warned that Plaintiff would have difficulty in successfully alleging a causal connection between his reliance on Aon's representations regarding its revenue and his injury. To do so, Plaintiff must show that his holding of the shares caused a loss because he would have sold his Aon shares *ahead* of the stock's decline. As the Court of Appeals explained, however, Aon had in fact publicly revealed the details of its financial troubles as soon as the problems arose, the value of Aon's stock would have decreased at that time, causing the stock price to drop earlier in time. Any "public announcement of the truth would have made it impossible for Anderson to avoid the loss." *Anderson*, 614 F.3d at 367. Nor can Plaintiff suggest he was somehow entitled to advance warning, as any private disclosure to Plaintiff alone would have violated federal security laws.

Plaintiff insists that the Seventh Circuit overlooked his allegation that Aon's accounting fraud also induced him to unwind his collar protection and sell his put option with Merrill Lynch. According to Plaintiff, the existence of the collar shielded Plaintiff from the pressure to sell his shares ahead of a drop in Aon stock in order to avoid a loss; "[a]fter the stock declined, Plaintiff would have the collar in place to protect himself." (Pl.'s Mem. at 8.) The court is unpersuaded by Plaintiff's attempt to now characterize his collar agreement with Merrill Lynch as "part and parcel" of his decision to hold onto his Aon shares. (*Id.*) California law defines a holder claim as "a cause of action by persons wrongfully induced to *hold* stock instead of selling it." *Small*, 30 Cal. 4th at 171, 65 P.3d at 1256 (emphasis in original). The fact that Plaintiff *sold* his put option with another party and allegedly suffered a loss by virtue of that transaction is a separate issue. *See id.* (distinguishing holder actions from other suits in which investors claim damages from the purchase or sale of stock).

In any event, a claim arising from the sale of Plaintiff's put option would face another obstacle: timing. Plaintiff has not pleaded with specificity when exactly he would have exercised the put option, had he known the truth about Aon's financial problems. The closest he comes is

11

an allegation that he unwound his collar and sold his put option in June 2002 after reading a "glowing 2002 first quarter report by Aon," and that, had he known that Aon was in fact overstating its earnings, he would have retained the option and exercised his put in August 2002 when he first learned the SEC was investigating Aon's accounting practices. (Am. Compl. ¶¶ 4-5, 59, 62.) Yet as Defendant points out, Plaintiff also claims that he "actually relied on the misrepresentations . . . on June 19, 2002 when he sold the put instead of holding it until expiration on October 17, 2002." (*Id.* ¶ 62.) Plaintiff thus could have exercised his put option either as early as August 2002, when Aon's stock declined, or as late as October 2002, just before the option expired.

In either such scenario, even assuming Plaintiff has any cause of action for the sale of his put option—as he previously asserted—those claims are now untimely. The district court found Plaintiff's securities claims untimely, *Anderson*, 2008 WL 5388321, at *3, and Plaintiff did not appeal that decision.[8] Plaintiff has not argued, nor would the court be convinced, that any current cause

---

[8] As the district court noted, federal securities fraud claims must be brought "within (1) two years after discovery of the facts constituting the violation . . . or (2) within five years after the representations were made . . . , whichever period is shorter." *Id.* at *3 (citing 28 U.S.C. § 1658(b)). Although the court in that decision addressed the timeliness of Plaintiff's Illinois securities fraud claim, which the court found to expire three years after Plaintiff discovered the fraud, *Id.* (citing 815 ILCS § 5/13(D)(2)), this court notes that California's statute of limitations for state securities fraud claims is even shorter for cases filed before January 1, 2005: "one year after the discovery by the plaintiff of the facts constituting the violation." Cal. Corp. Code § 25506(a).

As Plaintiff alleged that he discovered Defendant's fraud on or about September 27, 2002, the district court ruled untimely the federal and state securities fraud claims raised in Plaintiff's July 14, 2008, Amended Complaint. *Anderson*, 2008 WL 5388321, at *3-4. The court also noted that Plaintiff had waived any argument that the statute of limitations had been tolled. *Id.* at 3. Neither did the court find that the relation-back doctrine under FED. R. CIV. P. 15(c)(1)(B) rendered the 2008 claims timely. Although Plaintiff raised a securities fraud claim in his 2003 Complaint, at which point the claim would have been timely, the district court ruled that the claims in the 2008 Complaint did not "relate back" to the 2003 complaint because Plaintiff had voluntarily dismissed his earlier complaints without prejudice and re-filed a complaint in 2005, without securities fraud claims, in an effort to avoid federal jurisdiction. *Id.* at *1, *3-4. The district court cited "binding Seventh Circuit precedent" that "the relation-back doctrine 'simply does not apply' if a plaintiff's earlier complaint was dismissed without prejudice." *Anderson*, 2008 WL 5388321, at *3 (citing *Newell v. Hanks*, 283 F.3d 827, 834 (7th Cir. 2002); *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 923 (7th Cir. 2003); *Elmore v. Henderson*, 227 F.3d 1009, 1011 (7th Cir. 2000)). For the same reasons, this court finds that the "relation back" doctrine cannot render timely any California
(continued...)

12

of action for the sale of his put option relates back to his earlier complaint; thus, any such claim has expired under both federal and California law. See 28 U.S.C. § 1658(b); Cal. Corp. Code § 25506.

### B. Count II: Negligent Misrepresentation

As explained above, a holder claim for negligent misrepresentation must be pleaded "with the same specificity required in a holder's action for fraud," and while negligent misrepresentation does not require scienter, a plaintiff must sufficiently plead reliance. *Small*, 30 Cal. 4th at 184, 65 P.3d at 1265. As the court explained in *Small*, "[p]laintiffs who cannot plead with sufficient specificity to show a bona fide claim of actual reliance do not stand out from the mass of stockholders who rely on the market." *Id.* at 184-85, 65 P.3d at 1266. In this case, Plaintiff does not stand apart from the millions of other stockholders who lost money when Aon's stock plummeted in August 2002. He has not explained what specific representations he relied on in holding his shares; he cannot trace when exactly he relied on those representations; he cannot say how many of his 94,764 shares he would have sold; and he cannot state with any specificity when he would have executed such a sale. Nor is the court convinced that an opportunity to re-plead any of these facts would aid Plaintiff in this case. Plaintiff, now on his fifth amended complaint, has been granted several opportunities to clearly state his claims, and any further chance of Plaintiff successfully correcting these deficiencies would have no practical value at this stage.

Defendant contends that Plaintiff's negligent misrepresentation claim is also time-barred

---

[8](...continued)
securities fraud claim Plaintiff could bring in regards to the sale of his put option.

The court notes an irony here: the district court concluded that the relation-back doctrine did not render Plaintiff's Illinois securities fraud claims timely. That conclusion could be questioned. Plaintiff re-filed his 2005 complaint within three years of Plaintiff's discovery of the alleged fraud. Although the 2005 complaint did not raise securities fraud claims, the claims in that complaint were based on the same facts as the securities fraud claims raised in the 2008 amended complaint, and thus the 2008 claims would "relate back" to the 2005 complaint under FED. R. CIV. P. 15(c)(1)(B). Plaintiff did not raise this issue on appeal, however, and the issue is now moot because the Court of Appeals held that California law applies. Under California's shorter limitations period, the 2005 complaint can not serve as an "original pleading" under the relation-back doctrine to render timely an amended complaint alleging a California securities fraud.

because he filed his original complaint in 2003 and did not re-file it until 2005. According to Defendant, Plaintiff's negligent misrepresentation claim accrued on September 27, 2002, when he first learned of the alleged misrepresentations, and he was required under California law to file his complaint within two years. *See Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1054 (9th Cir. 2008) (citing Cal. Civ. Proc. Code § 339(1); *Ventura Cnty. Nat'l Bank v. Macker*, 49 Cal. App. 4th 1528, 1529, 57 Cal. Rptr. 2d 418, 418 (Ct. App. 1996)). Plaintiff insists that his original complaint alleged the same facts as present in the instant complaint, and therefore his negligent misrepresentation claim relates back under FED. R. CIV. P. 15(c)(1)(B). Yet Plaintiff voluntarily dismissed his original 2003 complaint in 2004, and as a matter of procedure, "a suit dismissed without prejudice is treated for statute of limitations purposes as if it had never been filed." *Elmore v. Henderson*, 227 F.3d 1009, 1011 (7th Cir. 2000) (explaining that without this rule, a "plaintiff could file a suit, dismiss it voluntarily the next day, and have forever to refile it"); *see also Hill v. City of Clovis*, 63 Cal. App. 4th 434, 445, 73 Cal. Rptr. 2d 638, 645 (Ct. App. 1998) ("[A] party's voluntary dismissal without prejudice does not come equipped by law with an automatic tolling or waiver of all relevant limitations periods; instead, such a dismissal includes the very real risk that an applicable statute of limitations will run before the party is in a position to renew the dismissed cause of action."). As a result, the relation-back doctrine does not apply and the statute of limitations bars Plaintiff's negligent misrepresentation claim.

## **CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss [152] is granted and Plaintiff's complaint is dismissed with prejudice.

ENTER:

Dated: September 29, 2011

_____
REBECCA R. PALLMEYER
United States District Judge